The Court

were of opinion that the treaty had the same operation as if no law had passed authorizing payments into the treasury j and, therefore, all acts done in virtue of said act of assembly were void; and therefore gave judgment, upon the case stated, for the plaintiff, that execution be awarded for the damages and costs recovered in the original judgment, and costs on the scire facias, to be levied of the part of the said lot of which the defendant admitted himself to be tenant. Interest from the 4th of July, 1776, to the 3d of September, 1783, to be released.
The defendant appealed to the court of appeals.
*145 I shall readily admit, that by the common law in England, lands of defendants are bound by judgments if held in fee-simple, and may be taken in execution; 2 Inst. 395. even though aliened bona fide, before execution sued, (30 Ed. III. 24.) from the time of signing the judgment by 29 Car. II. c. 2, 3. 3 Com. Dig. 298. But the only remedy at common law on a judgment whereby land could be taken in execution, was by levari faciqs, whereby the plaintiff could only take the present profits of the land and rents then due, 3 Coke, 11. b. 12. a; and also the goods and chattels of the defendant; but the lands could not be delivered in execution., Lands were not at any time subject to be taken by fieri facias in England. By the statute of Westm. 2. c. 18. a moiety of the lands of the defendant may be extended, and the goods of the party (except as therein excepted) by ek and the plaintiff holds that moiety until he shall beíjKtig^ lied his debt, by the yearly value at which it is i^li^red to him as found by inquest. These are the only utions in England, whereby lands can be affectefi personal actions. But by a statute made in the time Geo. I. lands in America are subject to be taken in execution by fieri facias, and sold as personal property, and to all intents and purposes considered as such for the payment of debts. Lands are by this act become a sort of mixed property, partaking of some of the qualities of real and personal; and if it is to be governed by the law with respect to the rules of personal property, the fieri facias only binds from the delivery to the sheriff If, on the other hand, the judgment is thought to be a lien on the land, I apprehend it must be governed by the common law, and the statute of Westminster, and either the present profits, if taken by levari, or a moiety of the land if by elegit, are the only means whereby the *146 judgments are to be paid out of the land. No fieri facias ever issued to bind the property in the present case.
I shall be told that the real estate is bound by the judgment; but I shall contend that if it was bound, and the judgment in this case had been a lien upon it, that it was discharged by the debt due thereon being discharged under the act of assembly, which enabled debtors to persons residing in Great Britain to pay their debts into the treasury, and discharge themselves thereby. The case stated admits that this was done, from which time to the treaty of peace, in September, 1783, the lots were discharged of any lien on them by the judgment, and although the treaty of peace provides that there shall be, no obstruction or hindrance to- the British creditor in recovering his debt from the person who- owes the same, or his property. It can only mean that his person, and the property then belonging to him, should be liable; it never could be the meaning of that article to make the property of a fair bona fide purchaser made under the faith of an act of assembly, and discharged thereby, to pay a debt, which was no lien on the property at the time j but can lands once discharged from a judgment, and the property purchased by another, be again made liable for the original debt by any rule of law; if so, where is it to be found ?
I shall be informed by the gentlemen on the other side, that this is like a mortgage. I take it to be very different. A mortgage is an actual conveyance of the legal title by the immediate act of the owner of the land, and on payment, requires a reconveyance thereof to revest the same. This is only a lien by operation of law, which may be discharged by many ways without any act of the debtor, either by the act of limitation, or a dis» charge out of custody on a ca. sa.
Key, for the appellee.
This is a case of a scire facias on a judgment obtained against Mark Alexander, against *147 the terretenants of the lands sold by him, after the judgment, and before the payment into the treasury.
A judgment, by the laws of this state, binds lands from the time of signing the judgment,, and not only in the hands of the debtor, but also in the hands of his assignee. It seems, therefore, extraordinary, to suppose that the payment made by Alexander could extinguish the lien on the land, and that under the treaty it is void as against the person or chattels. Certainly if it is void as to any purpose, it must be to all. The treaty does away the payment as effectually as if it had never been made.
The judgment bound the land, and created a lien as effectually as a mortgage, or a marriage settlement. The fifth article of the treaty gives a remedy against lands in such cases, even where there has been an actual confiscation. This is going much beyond the 4th article ; and is it possible to conceive that the lien shall continue where there has been an actual confiscation and sale by the state, and not where there has been a sale by a private individual?
Suppose a mortgagor had paid in money, and then sold the mortgaged premises, should not the creditor have recourse to the mortgaged premises ? And certainly the case of a judgment creditor is as strong a case as that of a mortgagee. The debt was never extinguished, consequently, the lien was not. The treaty removed the impediment, and revived the remedy, not partially, but wholly and unconditionally.
The court of appeals, at June term, 1795, reversed the judgment of the general court.
The judgment of the court of appeals was afterwards reversed in the supreme court of the United States. See 3 Dallas’s Reports, 199. 342.